1 So.2d 759

**PATTERSON v. STATE.**

8 Div. 998.

Court of Appeals of Alabama.
April 22, 1941.

W. C. Rayburn, of Guntersville, for appellant.

Thos. S. Lawson, Atty. Gen., and Noble J. Russell, Asst. Atty. Gen., for the State.

RICE, Judge.

There is no dispute but that appellant was drunk; and that he was being assisted on his way home by his friend Henry Traylor.

They got into a fight—the details being in confused dispute in the testimony. But however it all was, appellant bit Traylor on the "little finger" of one of his hands—inflicting a slight wound. Appellant was then carried on home by his brother.

The above happened on a Thursday night. The next morning appellant was back over at Traylor's house (from which Traylor had assisted him the night before), and he and Traylor in friendly fashion deplored the "scuffle" of the night before. Traylor had his finger (which was bit) "tied up;" but did not complain so much, nor appear to regard the wound as being serious. Appellant stated he remembered nothing about it. All was friendly enough—and appellant, it appears, pro-

cured some whiskey there at Traylor's house that morning.

Traylor applied "home remedies" to his finger, but it grew worse; and on the next *Tuesday* he consulted a doctor.

The doctor applied treatments, but in a couple of days "gangrene set up." In some twelve days Traylor's arm—in order to save his life, according to the doctor—had to be, and was, amputated.

■ Appellant was indicted for mayhem—the indictment, in pertinent part, being as follows: "The Grand Jury of said County charge that, before the finding of this Indictment Orville Patterson, alias Bob Patterson whose name to the Grand Jury is otherwise unknown than as stated, unlawfully, maliciously and intentionally cut, bit, tore, struck off, or disabled a limb, or member of Henry Traylor, against the peace and dignity of the State of Alabama."

Demurrers to the indictment were overruled. And we think properly so—since, under the provisions of Code 1928, Sec. 4958, it was sufficient in its allegations to charge the offense denounced.

■ But it will be noticed that both the Code section cited, and the indictment, provide that the act must be "unlawfully, maliciously, and intentionally" done.

And as explanatory of this provision we adopt as our own language of the annotator, found in the note at pages 494 and 495 of L.R.A.1916E, to-wit: "A specific intent to *maim* is generally held an essential ingredient of the offense of mayhem; but such intent may be inferred or presumed if the act was done deliberately *and the disfigurement was reasonably to be apprehended as the natural and probable consequence of the act.*" (Italics supplied by us.) And the said annotator cites, as supporting the above just quoted comment, among others, our own Supreme Court's cases of Molette v. State, 49 Ala. 18, and Green v. State, 151 Ala. 14, 44 So. 194, 125 Am.St.Rep. 17, 15 Ann.Cas. 81.

■ It is undoubtedly the law, that "a man may, in many instances, be so drunk as to be incapable of forming or entertaining any specific intention at all." King v. State, 90 Ala. 612, 8 So. 856, 857; Ivory v. State, 237 Ala. 344, 186 So. 460.

But the case below was tried without any suggestion of this principle of the law be-

ing made to the jury; or being requested to be made to the jury.

We cannot find that any ruling of the court with reference to the pleadings, or the admission or rejection of testimony, was prejudicially erroneous.

■ We have read and considered the entire testimony sitting en banc. And the verdict of the jury shocks our conscience.

As we read the testimony its overwhelming weight is to the effect that appellant, when he bit Traylor's finger, had no specific intent to *maim* him. Every circumstance points the other way. They were friends of long standing; and remained friends after the occurrence. Appellant was drunk, and stated that he did not remember biting Traylor. Traylor did not take issue with this statement when it was made—nor afterwards, that we can find.

Nor can we find evidence indicating that Traylor's "disfigurement (the loss of his arm) was reasonably to be apprehended as the natural and probable consequence of the act" (appellant's biting his finger).

The conviction for the offense of mayhem is not supported by the great weight of the evidence; or, rather, we should say, the great weight of the evidence is to the effect that appellant *intended* no mayhem.

His motion to set aside the verdict of the jury because it was opposed to the great weight of the evidence should have been granted. For its refusal the judgment is reversed and the cause remanded.

Reversed and remanded.